## Aldrich *versus* Jessup et al.

Where the forfeiture of an estate to the commonwealth, on the account of treason and in pursuance of an act of the legislature is complete, a pardon without words of restitution does not restore the estate.

ERROR to the Court of Common Pleas of *Susquehanna County.*

Ejectment for four acres of land.

Plaintiffs deduced their title from the commonwealth by a warrant for three hundred acres of land in Susquehanna County issued to J. B. Salisbury, Dec. 2, 1851, followed by survey—return, and patent to Salisbury February 10, 1852.

[Aldrich *v.* Jessup et al.]

Defendant claimed under a warrant to Andrew Allen, for three hundred acres of land, embracing the land in dispute, dated August 20th, 1774, and survey thereon duly returned in 1775.

Defendant also proved that Wm. Tinker and Rosswell Brown surveyed with lines clearly marked ninety acres of the lot patented to plaintiffs, and divided between them; Brown moved on his part, built, cleared, and resided there; Tinker commenced to clear on his part in 1828, and then cleared two or three acres, and sowed it for two successive years, when he seeded it. To this clearing he added as much more. This five or six acres included the land in controversy. Tinker fenced and occupied this clearing as a pasture until the spring of 1847, when he sold to defendant some twenty acres, including this clearing. Defendant continued to occupy this land until the commencement of this suit.

Salisbury, previous to his application for his warrant, had notice that this Tinker lot had been taken up and was claimed by settlers.

Plaintiffs then read the act of assembly March 6, 1778, attainting Andrew Allen and others of high treason, and forfeiting their estates, real and personal, to the State.

Defendant then offered in evidence a duly authenticated copy, from the records of the secretary of the commonwealth, of the pardon of Andrew Allen, by the Governor, Thomas Mifflin, September 12, 1792, "as well in respect to the treasons whereof he was attainted, as of any other treasons by him committed."

Also, a like copy from the said records of the proceedings of the president, vice-president, and members of the executive council, September 1, 1789, setting forth that 3,600 acres of land, located in August, 1774, by Benjamin Chew, Edward Shippen, Joseph Shippen, Samuel Meredith, and Andrew Allen, on the waters N. E. branch of Susquehanna, then in Northumberland County; that the share of the said Allen, by his attainder, became the property of the commonwealth.

And a resolution, authorizing and requiring the Surveyor-general, receiver-general, and secretary of the land-office, on the part of the State, to consult with the other owners, and with them make partition of the said lands, agreeably to the original contract of the parties, and make report to the council.

Also their report to the council, October 9, 1789, that they examined the deed *quinquipartite* between said Chew, Shippens, Meredith, and Allen, October 16, 1775, and made partition, the State taking, in right of Andrew Allen, 5,878 acres, which report the council adopted. To which plaintiffs objected. The court sustained the objection and rejected the evidence,

[Aldrich *v*. Jessup et al.]

and instructed the jury to find for the plaintiffs, and this forms the subject of complaint in this court.

*R. B. Little*, for plaintiff in error.

1. As to the pardon. Although it contained no words of restitution, yet, as the State had not then taken possession of Allen's real estate, there was really nothing to restore. By its own operation, it placed him where he was before the attainder, as to every right of property that remained in his possession during his temporary disability. 4 Black. Comm. 402; *Matter of Deming*, 10 Johns. 232, id. 10 Johns. 483.

2. The record of the supreme executive council was certainly evidence to show that the State, in acquiring Allen's interest in these lands, defined and ascertained, by her *authorized* officers, that interest to be but an undivided one-fifth of three-fourths. The *partition* which followed this ascertainment was, as we shall presently claim, *unauthorized* and void. But this excess of action did not invalidate such other action as fell within their authority. It is a question of power; and in *Bagley* v. *Wallace* and *Miles* v. *Congregation*, I think it was not doubted that the State, by her executive council, acquired and only claimed to acquire Allen's undivided interest. She asserted that, and only that; and as she was bound to that defined right, so are these plaintiffs who derived their pretensions from that source.

To show that this power of ascertainment was given to the council, we refer to the sixth and seventh sections of the act of attainder itself, 1 Smith's Laws, 452–3.

2. The partition, however, was unauthorized. The act of April 29, 1779, 1 Smith's Laws, 467, directed the council to sell this Allen interest "*by public auction to the best and highest bidder*," &c. Any other method of disposal is void. They could make no partition bargain, by which to throw into the land-office a share for repatent to purchasers at ten pounds per 100 acres. Indeed, Judge Houston, in 4 Watts, 150, admitted this want of authority, and that escheated lands could not be sold by warrant and patent. *Bagley* v. *Wallace*, 16 S. & R. 245; *Miles* v. *Congregation*, 4 Watts, 150; *Gordon's Case*, 1 Dall. 233; 1 Yeates, 290; 7 S. & R. 304.

Then no rights passed to these plaintiffs from the land-office; and if that were possible, it would only be an undivided interest, which cannot be recovered in an action brought for an entirety. 2 Trob. & Hal. 254.

But they got no rights. We prove a marked, hostile possession of *twenty-six* years, purchase-money and taxes paid, improvements made, and now that it has become valuable by

[Aldrich *v.* Jessup et al.]

the establishment of a railroad depot upon its very borders, the statute of limitations can never operate more beneficently than to protect us from the cupidity of the speculator. Suppose time does not run against the State—it *does* run against every other right; and here the State never had but the *undivided* Allen interest that any argument could hold to be unimpaired by time.

3. But let us see if the act of 11th March, 1843, aids this spoliation. It provides that " all patents *granted* by the commonwealth do pass her entire estate to the patentees."

Is not this a quieting act, referring only to patents " *granted*" before its passage? Should construction expand it to cover a patent just now obtained by a party having notice of our occupancy and our equities? At any rate, it only passes the interest of the commonwealth; and the partition being void, her interest is but one-fifth of three-fourths.

If any legislative construction were necessary to protect us, it is in the act of April 13th, 1854, Pamph. Laws, 340; which declares the act of 1843 " shall not be construed to interfere with the rights of actual settlers, or to extend to lands that may have been escheated to the commonwealth." Is not this defendant a *settler*, within the meaning of the law?

And certainly these are *escheated* lands. There can be no quibble made about terms; the intent is manifest; and the word too is proper. In Burrill's Law Dictionary, p. 430, Part 1st, *Escheat* is defined thus: " To fall back, revert, return, or become *forfeited* to the lord, the crown, or the *State.*" He says: " Forfeiture and escheat seem to have been used indifferently, to signify the same thing, from a very early period."

Here it is peculiarly the word; for the State in 1774 granted these lands, and by Allen's treason, they *fell back*, or returned to her.

*Bentley* and *Fitch*, for defendant in error.

1. The title of the commonwealth was absolutely vested by the act of 1778, upon the attainder without office, found sec. 1st, Smith's Laws, sec. 5, p. 467, &c.

The forfeiture was absolute. *Dietrick* v. *Mateer*, 10 S. & R. 151; *Ash* v. *Ashton*, 3 W. & S. 514.

2. The pardon did not restore the property after office found. *King* v. *Ward's Ex's*, 1 Levins, p. 8; *Tombs* v. *Etherington*, 1 Levins, p. 120; *Same case*, 1 Saunders, p 360, note 1; 4 Black. Com. 401; 2 Hawk, P. C. ch. 37, sec. 54; 2 Hawk, P. C. ch. 37, sec. 54; 5 Bac. Abridgment, 296—(H.); 2 Cov. & Hughes, Dig. p. 1014, secs. 23-4-5.

3. The act of 11th March, 1843, sec. 4, gave full effect to the

patent, so as to vest all the title of the State in the patentees, and it was not in the power of the legislature to divest that title by the act of 13th April, 1854, Pamp. L. p. 340. Having in 1850 received the money of the patentees, and given them a valid title, she could not by any subsequent legislation take away the property thus vested.

This confiscated land was, by the act of 1843, open to patents, and having been granted, the legislature had no power to annul that grant and assume to herself the land. Such is the effect proposed to be given to the statute.

4. The State had the entire title to this land.

The opinion of the court was delivered May 17th, 1855, by

KNOX, J.—By the 5th section of the act of 6th March, 1778, the estate of Andrew Allen, from and after the twentieth day of April then next ensuing, was forfeited to the commonwealth, *without any office or inquisition thereafter to be taken or found.*

The forfeiture being complete, the pardon without words of restitution did not restore the estate, and therefore its rejection was proper.

If the record of the proceedings of the executive council had been admitted as evidence, it would not have helped the plaintiff in error. Conceding the partition to have been unauthorized, its validity cannot be questioned by a stranger after it has been acquiesced in by the parties in interest for a period of upwards of sixty years.

It would be productive of incalculable mischief to interfere now with the division of this large body of land, even upon the application of one showing title; but to do so against the wishes of the holders of the legal title, at the instance of an intruder, would be alike contrary to reason and law.

                                        Judgment affirmed.